IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AUTO-OPT NETWORKS, INC.,           §
                                   §
                    Plaintiff,     §
                                   §   Civil Action No. 3:14-CV-1252-D
VS.                                §
                                   §
GTL USA, INC., et al.,             §
                                   §
                    Defendants.    §

MEMORANDUM OPINION
AND ORDER

In this transferred action alleging claims under the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., the Lanham Act, 15 U.S.C. § 1114,

the Economic Espionage Act of 1996 ("EEA"), 18 U.S.C. § 1832, and state law, the court

addresses defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(2), and

12(b)(6).  For the reasons that follow, the court denies the Rule 12(b)(1) motion, denies the

Rule 12(b)(2) motion as moot, grants the Rule 12(b)(6) motion as to plaintiff's federal-law

claims, declines at this time to exercise supplemental jurisdiction over plaintiff's state-law

claims, and grants plaintiff leave to amend.

I

A

Plaintiff AutoOpt Networks, Inc. ("AutoOpt") is the owner and developer of data

collection, analysis, and reporting software known as "HASATI."  HASATI is used by

wireless companies to test the quality and strength of cell phone signals generated from

towers throughout the United States.[1]   The testing is performed on the ground by "drive teams" who physically drive designated routes in vehicles equipped with data collecting devices utilizing HASATI software.

In 2011 AutoOpt entered into a license agreement ("Agreement")[2] with defendant GTL (USA), Inc. ("GTL") under which GTL was permitted to use the HASATI software when performing drive testing data collection services for various major cell phone service providers, such as AT&T.[3]   Under the Agreement, GTL agreed to pay AutoOpt for the use of the HASATI software and related services based on what it charged AT&T and other clients.

For the first 12 months of the parties' contractual relationship, with rare exceptions, GTL timely paid AutoOpt all of the software licensing fees due under the Agreement. Beginning in August 2012, however, GTL ceased making timely payments of AutoOpt's invoices.  In December 2012 AutoOpt notified GTL that this failure to pay for the licensing of AutoOpt's software was a material breach of the Agreement, and it demanded full

_____

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes AutoOpt's amended complaint in the light most favorable to AutoOpt, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in AutoOpt's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]AutoOpt alleges that there were three agreements: a General Agreement for Software Usage & Professional Services, a Technical Order Agreement, and a Client Software and Application Management License Agreement.  For ease of reference, the court will refer to all three, collectively, as the Agreement.

[3]AutoOpt did not provide GTL with the HASATI software or source code.  Instead, it provided GTL with an application that could be downloaded to AT&T's smart phones and tablets, thus enabling GTL to collect data.

payment. GTL responded by exercising its "right to cure," as permitted under the Agreement, and volunteering to undertake a payment plan pursuant to which it would pay by the end of January 2013 monies due to AutoOpt. Despite submitting this "cure plan," GTL failed to pay the unpaid balances by January 2013. As of June 2013, GTL owed AutoOpt almost $2.5 million in unpaid invoices.

On June 21, 2013 AutoOpt notified GTL by letter that, due to its breach of the Agreement and failure to honor its payment "cure" plan, AutoOpt was canceling GTL's license for the HASATI software effective June 26, 2013. AutoOpt also notified GTL that

> in accordance with the Federal Rules of Procedure, AutoOpt intends to apply for the issuance of an injunction in the US Federal District Court, against GTL to enjoin and restrain GTL f[ro]m utilizing its Proprietary Software subsequent to the June 26, 2013 CANCELLATION DATE. You should be guided accordingly.

P. Br. 11 (quoting P. Ex. A).

In July 2013 defendant GTL Ltd. ("GTL Ltd.") requested a meeting with AutoOpt at its offices in Navi Mumbai, India to arrange for payment to AutoOpt. GTL Ltd. wholly owns GTL International Ltd. ("GTL International"), which wholly owns GTL. AutoOpt's President flew to India and met with defendants Urmeet Singh Juneja, Sr. ("Juneja"), the Senior Vice President of GTL, Sukanta Kumar Roy ("Roy"), a board member of GTL and GTL Ltd., and Pinakin B. Gandhi ("Gandhi"), President of the International Business Division of GTL Ltd. At this meeting, defendants did not offer to make payment; instead, they explained that they were pursuing a credit facility in order to pay AutoOpt, and they

requested additional time to make payment.

The following month, Juneja requested that AutoOpt's President meet with him in Plano, Texas, indicating that he had received authority from GTL Ltd. to make payment to AutoOpt. AutoOpt's President traveled to Texas and met with Juneja, Gandhi, and defendant Retassh A. Bhansali ("Bhansali"), Chief Financial Officer of GTL International. Defendants informed AutoOpt at the meeting that GTL Ltd. had ordered the shutdown of GTL's operations unless AutoOpt agreed to discount GTL's overdue invoices by approximately 50% and allow defendants more time to pay. AutoOpt rejected the proposal. AutoOpt alleges that, as of November 25, 2013, GTL owed AutoOpt $2,681,934.65 under the Agreement and $316,171.24 in late fees.

AutoOpt alleges that, during the course of its license Agreement with GTL, defendants Roy, Bhansali, Manoj Gajanan Tirodkar ("Tirodkar"), and Gandhi ordered GTL to cease paying GTL's U.S.-based vendors and suppliers and wire transfer the funds outside the United States to GTL Ltd. According to AutoOpt's amended complaint, Juneja implemented this directive through a series of international bank wire transfers made throughout 2012 and 2013 from GTL's corporate accounts to the overseas banks of GTL's parent companies. AutoOpt asserts that defendants illegally converted and transferred to overseas accounts approximately $2.7 million of AutoOpt's accounts receivable, paid to GTL by AT&T and other telecom clients.

AutoOpt also avers that, despite its notification that GTL's license to use the HASATI software had been canceled due to nonpayment, defendants continued to illegally use

- 4 -

AutoOpt's proprietary software.  AutoOpt alleges that it discovered in August 2013 that GTL had posted an advertisement soliciting employment of a software manager who had knowledge regarding "customizing HASATI application as per consumer requirement."  Am. Compl. ¶ 21 (emphasis omitted).  And AutoOpt asserts that GTL's solicitation for a software engineer with the ability to customize, copy, and/or modify the HASATI software "conclusively demonstrates Defendants' intention to illegally and improperly convert [AutoOpt]'s proprietary software for its own commercial use, in direct violation of" the Agreement.  *Id.*

B

In October 2013 AutoOpt filed this lawsuit in the United States District Court for the District of New Jersey ("New Jersey District Court") against GTL, GTL International, and GTL Ltd.; Juneja, Roy, Bhansali, Tirodkar, and Ghandi (collectively, the "individual defendants"); and other "unknown persons who served as officers, directors, employees, and/or managers, of GTL."  Compl. ¶ 5.  In its complaint, AutoOpt alleged claims for violations of RICO, breach of contract, theft of trade secrets under 18 U.S.C. § 1832, breach of covenant of good faith and fair dealing, and fraud, and it sought damages, the imposition of a constructive trust, and injunctive relief.  AutoOpt served Roy and Juneja with process during a meeting in New Jersey.  It later amended its complaint to add a claim under § 32 of the Lanham Act.

Defendants moved the New Jersey District Court to dismiss the lawsuit under Rules 12(b)(1)-(6), or, alternatively, to transfer the case to this court.  The New Jersey District

- 5 -

Court transferred the lawsuit to this court under 28 U.S.C. § 1404(a), without reaching the merits of defendants' other motions. Defendants' motions to dismiss under Rules 12(b)(1), (2), (4), (5), and (6) are now ripe for decision.[4]

## II

Defendants move under Rule 12(b)(1) to dismiss this case for lack of subject matter jurisdiction.

### A

Because federal courts are courts of limited jurisdiction, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.2d 1182, 1187 (2d Cir. 1996)) (internal quotation marks omitted). Thus "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim that would entitle [the plaintiff] to relief." *Id.* (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992)).

### B

Defendants maintain that AutoOpt "asserts claims nominally based on federal

---

[4]In view of the court's decision on defendants' Rule 12(b)(6) motion, it is not reaching at this time their motions to dismiss under Rules 12(b)(4) and (5).

Defendants moved the New Jersey District Court to dismiss this action under Rule 12(b)(2) on the ground that New Jersey courts lacked personal jurisdiction over them. Because they did not argue that Texas courts lacked personal jurisdiction, and they requested that the suit be transferred to Texas, the court denies their Rule 12(b)(2) motion as moot.

statutes" that "cannot survive scrutiny," and they argue jointly for dismissal based on lack of subject matter jurisdiction and failure to state a claim on which relief can be granted.  Ds. Br. 17.  The court's subject matter jurisdiction, however, does not turn on whether AutoOpt has plausibly alleged facts sufficient to state a claim under the federal statutes pleaded in the complaint; instead, it turns on whether AutoOpt's well-pleaded complaint asserts a federal question cause of action.  *See, e.g., Barron v. Patel*, 2011 WL 690183, at *1 (N.D. Tex. Feb. 16, 2011) (Fitzwater, C.J.).  Subject matter jurisdiction is not defeated

> by the possibility that the averments might fail to state a cause of action on which [the plaintiff] could actually recover.  For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.  Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.  If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Al-Juburi v. Chertoff*, 2007 WL 2285964, at *2 (N.D. Tex. Aug. 9, 2007) (Fitzwater, J.) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)); *see also Lucky v. Haynes*, 2013 WL 3155956, at *3 (N.D. Tex. June 20, 2013) (Boyle, J.) ("[A]n attack regarding the sufficiency of a plaintiff's claims is appropriately brought in a Rule 12(b)(6) motion to dismiss for failure to state a claim, not in a Rule 12(b)(1) motion." (citing Rule 12(b)(6))); *EEOC v. Serv. Temps*, 2010 WL 5108733, at *2 (N.D. Tex. Dec. 9, 2010) (Fitzwater, C.J.) ("'[J]urisdiction under the federal question statute is not defeated by the possibility that the averments, upon

close examination, might be determined not to state a cause of action.'" (quoting *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1316-17 (7th Cir. 1997))), *aff'd*, 679 F.3d 323 (5th Cir. 2012).  Because AutoOpt's well-pleaded complaint asserts federal question claims, it has invoked this court's federal question jurisdiction, and defendants' motion to dismiss under Rule 12(b)(1) lacks merit.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *see also Morrow v. J W Electric, Inc.*, 2011 WL 5599051, at *1 (N.D. Tex. Nov. 16, 2011) (Fitzwater, C.J.) (rejecting argument that plaintiff failed to allege facts that established court's subject matter jurisdiction because well-pleaded complaint asserted claim under federal statute).[5]

## III

The court now considers defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted.  Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467

---

[5]Moreover, "[d]istrict courts can in their discretion treat a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and analyze it under the Rule 12(b)(6) standard." *Lopez-Santiago v. Coconut Thai Grill*, 2014 WL 840052, at *3 n.4 (N.D. Tex. Mar. 4, 2014) (Fitzwater, C.J.) (citing *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.")).

(5th Cir. 2004)).  To survive defendants' motion, AutoOpt's amended complaint must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

IV

Defendants move to dismiss AutoOpt's civil RICO claim.

A

RICO makes it unlawful "for any person employed by or associated with any

- 9 -

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "'Reduced to their simplest terms, the essential elements of a RICO claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.) (quoting *Larrew v. Barnes*, 2002 WL 32130462, at *1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.), *rec. adopted*, 2002 WL 32130462 (N.D. Tex. Sept. 17, 2002) (Fitzwater, J.)).

"Section 1961(1)(B) defines 'racketeering activity' according to whether it constitutes 'any act which is indictable' under several specified sections of title 18 of the United States Code, [two] of which [are] mail fraud [and wire fraud]." *Trugreen Landcare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). "To establish a pattern of racketeering activity, [AutoOpt] must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts." *Orthoflex, Inc.*, 2012 WL 2864510, at * 2 (citing *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993)). A pattern of racketeering activity includes two or more acts of racketeering activity. *See* 18 U.S.C. § 1961(5). "[A] 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742. "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted). Predicate acts are related if they "have the same or similar purposes, results, participants,

victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240.  Continuity requires that the related acts "constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 742 (citing *H.J. Inc.*, 492 U.S. at 239).  Continuity may be proved by "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241.  "A closed period of conduct may be demonstrated 'by proving a series of related predicates extending over a substantial period of time,'" while "[a]n open period of conduct involves the establishment of 'a threat of continued racketeering activity.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (citing *H.J. Inc.*, 492 U.S. at 242-43).

B

Defendants contend that the amended complaint, while cloaked in RICO verbiage, fails to satisfy the required elements of a civil RICO claim.  They argue, *inter alia*, that AutoOpt has failed to plead a "pattern" of racketeering activity because the alleged deception lacks both the scope and duration sufficient to establish a pattern; the amended complaint alleges predicate acts that commenced more than one year after the Agreement was signed, and span only fifteen months preceding the filing of this lawsuit; because the Agreement has been terminated and GTL is no longer receiving revenues associated with the use of AutoOpt's software, defendants pose no realistic threat of continued criminal activity; and although the amended complaint identifies two other victims of the alleged scheme, it does not plead any details regarding the nature of the other transactions, their "relatedness," their

- 11 -

duration, or their future continuity.

AutoOpt responds that the alleged predicate acts constitute a pattern and practice by defendants of defrauding companies by operating through ostensibly legitimate companies such as GTL, collecting money for work performed by its creditors, and then, instead of paying those creditors for their services, illegally diverting the subcontractors' monies to overseas accounts controlled by GTL International or GTL Ltd. through a series of international banking transactions. AutoOpt alleges that defendants have defrauded at least two other companies, including Mars Group, Inc. ("Mars") (defrauded of $100,000) and Radha Krushn Communications ("Radha") defrauded of $30,000), through an identical scheme. AutoOpt argues that the racketeering acts all had a similar purpose, method of commission, and result; that defendants' activity continued over a closed period of approximately 15 months; and that there is a real threat of open-ended, continuing racketeering activity as defendants continue to engage in contracts with other legitimate U.S. creditors.

C

The court concludes that the amended complaint fails to state a plausible civil RICO claim because it does not adequately plead a pattern of racketeering activity.

"Continuity cannot be established by multiple acts of fraud that are part of a single transaction." *Orthoflex, Inc.*, 2012 WL 2864510, at *3 (citing *Word of Faith*, 90 F.3d at 123 ("It is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO. [Fifth Circuit precedent] make[s] clear that where alleged RICO predicate acts

are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown.")); *Burzynski*, 989 F.2d at 743 (holding that continuity was not established because "[*a*]*ll* of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended"); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) ("Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate [merger].").  When this is the case, "[t]he conduct d[oes] not constitute or threaten long-term criminal activity." *Burzynski*, 989 F.2d at 743; *see also Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991) ("Short-term criminal conduct is not the concern of RICO.").

AutoOpt does not plead specific dates on which the alleged predicate acts occurred. The court thus assumes *arguendo* that all of the predicate acts occurred at some point between the beginning of the parties' contractual relationship (July 2011) and the date AutoOpt filed this lawsuit (October 2013).   The alleged predicate acts consist of communications among the defendants or with their customers relating to the Agreement, communications between the defendants and AutoOpt relating to payment of overdue invoices under the Agreement, and wire transfers of funds among the three corporate defendants, allegedly to avoid payment under the Agreement.  AutoOpt terminated the Agreement in June 2013.  Therefore, the allegations are similar to those in *Orthoflex*, *Burzynski*, and *Word of Faith* in that the predicate acts were part of an otherwise lawful transaction or contractual relationship that has since ended.  *See, e.g., Orthoflex*, 2012 WL

2864510, at *3 (holding that plaintiff failed to plead continuity of racketeering activity where allegedly fraudulent communications occurred over span of two years and in course of distribution agreement that had since terminated). Because the Agreement has been terminated and the funds allegedly due under the Agreement have already been transferred to GTL's parent companies, AutoOpt has failed to adequately plead conduct that constitutes or threatens long-term criminal activity.

AutoOpt's allegation that defendants have engaged in an "identical scheme" to defraud at least two other companies does not plausibly plead continuity. The entirety of AutoOpt's allegations about these "identical scheme[s]" are as follows:

> The Plaintiff discovered that the Defendants' fraudulent scheme to illegally misappropriate and convert via international wire transfer, Plaintiff's earned receivables to GTL's parent companies . . . in Singapore and India, was also intentionally perpetrated against other [U.S.-]based sub-contractors servicing the Telecom industry. These other companies whose funds the Defendants have illegally converted include [Mars] headquartered in Bloomington, Illinois, which was defrauded of approximately $100,000 and [Radha], with offices in Texas and California, which the Defendants defrauded in excess of $30,000 in an identical scheme.

Am. Compl. ¶ 30. AutoOpt's conclusory allegation that defendants engaged in an "identical scheme" to defraud Mars and Radha is insufficient of itself to plausibly allege related predicate acts of racketeering activity that constitute or threaten long-term criminal activity. *See Burzynski*, 989 F.2d at 744 (dismissing RICO claim because, *inter alia*, "[t]o permit [the plaintiff to rely on general, speculative, and unsupported pleading] would allow conclusory pleading to erode the substance of the 'continuity,' 'enterprise,' and 'pattern' requirements"

- 14 -

of RICO).  Additionally, the amended complaint does not plausibly allege *related* criminal acts because it does not plead any of the details of defendants' conduct in relation to Mars or Radha.

Accordingly, the court dismisses AutoOpt's civil RICO claim because the allegations of its amended complaint do not allow the court to draw the reasonable inference that defendants engaged in a pattern of racketeering activity.[6]

D

AutoOpt also alleges a RICO conspiracy claim under 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of [RICO]." "To prove a RICO conspiracy, the [plaintiff] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *Trugreen Landcare*, 512 F.Supp.2d at 625 n.11 (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)).  "A RICO conspiracy thus has RICO-specific requirements—such as an agreement by at least two conspirators to engage in a pattern of racketeering activity."  *Id.*  If the amended complaint is insufficient to enable the court to draw the reasonable inference that there has been a pattern of racketeering activity, the same allegations cannot be the basis for a RICO conspiracy claim because there can be no agreement to engage in a substantive RICO offense that does not exist.  The court

---

[6]Because the amended complaint fails to adequately plead continuity between the predicate acts, the court need not reach defendants' contentions that AutoOpt has failed to plead a valid enterprise under RICO, or to plead the predicate acts of fraud with particularity.

therefore dismisses AutoOpt's RICO conspiracy claim for failure to state a claim on which relief can be granted. *See Orthoflex*, 2012 WL 2864510, at *4 (citing *Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *6 (N.D. Tex. Dec. 14, 2010) (Boyle, J.) ("Because all other RICO claims have been dismissed, the RICO conspiracy claim must also be dismissed.")).

E

In its response, AutoOpt requests that, if the court determines that more specificity is required in connection with its RICO claims, it be allowed to file a RICO case statement, pursuant to D.N.J. Civ. R. 16.1(b)(4) ("In a civil action arising under 18 U.S.C. §§1961-1968, the Judge or Magistrate Judge may require a RICO case statement to be filed and served in the form set forth in Appendix O."). This court's local civil rules neither permit nor require a plaintiff to file a RICO case statement. But because the court is granting AutoOpt leave to replead, *see infra* § VIII, AutoOpt can attempt through an amended complaint to address the defects identified in this memorandum opinion and order and state a civil RICO claim on which relief can be granted.

V

Defendants move to dismiss AutoOpt's claim brought under § 32 of the Lanham Act, 15 U.S.C. § 1114.

A

"To succeed on a trademark infringement claim, a plaintiff first must show ownership of a legally protectable mark, and then it must establish infringement of the mark." *TGI*

- 16 -

*Friday's, Inc. v. Great Nw. Rests., Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater,

C.J.) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)).

> Under the Lanham Act, infringement exists if a person uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

*Id.* (citation and internal quotation marks omitted).

B

Defendants contend that AutoOpt has not stated a plausible claim under the Lanham

Act because AutoOpt has not alleged that it owns or has registered any mark, and the

amended complaint in fact admits that AutoOpt does not own the HASATI trademark; that

AutoOpt has not plausibly alleged that any defendant has used a reproduction, imitation, or

counterfeit of a registered mark owned by AutoOpt; that, to the extent AutoOpt alleges that

defendants stole its software, § 1114 does not protect AutoOpt's software, and, in any event,

the Agreement expressly authorizes GTL to use the software; and that, to the extent AutoOpt

alleges that defendants infringed an unidentified *copyright*, the claim is not cognizable under

the Lanham Act.

AutoOpt responds that it has standing to pursue all claims related to the HASATI

trademark because it is the assignee of all rights to that mark, and that it has adequately

pleaded a claim under the Lanham Act because it has alleged that defendants continue to use

its software in third-party dealings and have "used the HASATI name in an attempt to

- 17 -

reverse engineer the software," and because it has pleaded "the overall scheme, motive, belief of intent and surrounding acts and circumstances."  P. Br. 47.

Defendants reply that AutoOpt has not pleaded that GTL ever claimed to own the HASATI mark, that GTL applied that mark to a different product, that GTL sold AutoOpt's software, or that GTL used any confusingly similar mark.  They maintain that AutoOpt has not pleaded any facts that would support an inference that AT&T or any other consumer is likely to be confused about the software's source.

C

AutoOpt alleges that defendants violated § 32 of the Lanham Act, 15 U.S.C. § 1114, by "us[ing] AutoOpt's proprietary, copyrighted HASATI *Software*, without compensation," and by "publicly representing themselves as having control of the *Software* and the right to alter and modify it."  Am. Compl. ¶ 53 (emphasis added).  Although pleaded under the Lanham Act, AutoOpt's claim related to the unauthorized use and attempted piracy of its copyrighted *software* does not allege *trademark* infringement under § 32 of the Lanham Act.

AutoOpt's proprietary software does not constitute a "registered mark" under § 32. *See* 15 U.S.C. § 1114.  Section 32 provides:

> Any person who shall, without the consent of the registrant . . .
> use in commerce any reproduction, counterfeit, copy, or
> colorable imitation of a *registered mark* in connection with the
> sale, offering for sale, distribution, or advertising of any goods
> or services on or in connection with which such use is likely to
> cause confusion, or to cause mistake, or to deceive . . . shall be
> liable[.]

*Id.* (emphasis added).  The only registered trademark that AutoOpt alleges is the trademark

its affiliate owns in the word "HASATI."

Nor has AutoOpt plausibly pleaded that the unauthorized use of its software after cancellation of the Agreement or defendants' posting an Internet advertisement soliciting a software engineer with the ability to "customiz[e] HASATI application as per consumer requirement," is likely to cause confusion regarding the "HASATI" trademark. Am. Compl. ¶ 21. AutoOpt alleges that, as a result of defendants' actions, "Telecom clients and the public are likely to believe that Defendants, not Plaintiff, are the originators, inventors, and authors of the HASATI *Software*," and, as a result, "AutoOpt's ability to gain revenue through the sale of its proprietary, copyrighted HASATI *Software* is harmed." *Id.* at ¶ 53 (emphasis added).

Because AutoOpt has not pleaded, as required under § 32 of the Lanham Act, that defendants used a reproduction, counterfeit, copy, or imitation of any registered mark in connection with the sale, distribution or advertising of any goods or services, or that such use is likely to cause confusion, the court grants defendants' motion and dismisses AutoOpt's claim under § 32 of the Lanham Act, 15 U.S.C. § 1114.[7]

---

[7]In dismissing AutoOpt's § 32 claim, the court does not suggest that AutoOpt cannot plead a plausible Lanham Act claim of any kind on which relief can be granted. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the Supreme Court addressed a "reverse passing off" claim brought under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), noting that this section "is one of the few provisions [of the Lanham Act] that goes beyond trademark protection." *Id.* at 29. The Court explained that "Section 43(a) of the Lanham Act prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill." *Id.* at 32; *see also Schlotzsky's Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 399 (5th Cir. 2008) (holding that § 43(a) of the Lanham Act applied to plaintiff's claim that defendant "damaged its goodwill and profited by

## VI

Defendants also move to dismiss AutoOpt's claim under the EEA, 18 U.S.C. § 1831-39, arguing that there is no private right of action under this statute.  AutoOpt does not specifically address this argument in its response.

18 U.S.C. § 1832(a)(1) makes it a criminal offense, *inter alia*, to knowingly steal a trade secret, or to knowingly attempt or conspire to steal a trade secret.  Because § 1832 does not provide for a private right of action, the court grants defendants' motion to dismiss this claim.  *See Anderson v. Google Inc.*, 2013 WL 2468364, at *2 (N.D. Cal. June 7, 2013) ("[T]he Amended Complaint's first cause of action, 18 U.S.C. § 1832, fails as a matter of law since it invokes a criminal statute without a private right of action."); *Cooper Square Realty Inc. v. Jensen*, 2005 WL 53284, at *1 (S.D.N.Y. Jan. 10, 2005) ("The EEA does not create a private cause of action and *ipso facto* cannot support federal subject matter jurisdiction.").

## VII

AutoOpt also asserts state-law claims for breach of contract, breach of covenant of good faith and fair dealing, fraud, and imposition of a constructive trust.  Although this court

---

misrepresenting that it was solely authorized to act on behalf of the [plaintiff] in relevant respects"); *but cf. Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149 (5th Cir. 2004) (per curiam) (holding, where plaintiff alleged Lanham Act claim based on defendant's alleged copying of its copyrighted computer software, that "[i]n sum and substance, [the plaintiff's] claim is simply a claim that [the defendant] has infringed its copyright . . . [and] *Dastar* makes clear that such claims are not actionable under § 43(a)."). AutoOpt has not pleaded a claim under § 43(a) of the Lanham Act, however, so the court does not at this point address whether such a claim, if properly pleaded, would be plausible and therefore survive a Rule 12(b)(6) motion.

can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a),

"when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the

Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the

pendent state law claims." *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)

(citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by*

*Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc).   Having

dismissed AutoOpt's federal-law claims, the court in its discretion declines at this time to

exercise supplemental jurisdiction over its state-law claims.[8]

## VIII

Although the court is granting defendants' motion to dismiss under Rule 12(b)(6), it

will permit AutoOpt to replead.   *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370

F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often

afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case,

unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling

or unable to amend in a manner that will avoid dismissal).   Because there is no indication that

AutoOpt cannot, or is unwilling to, cure the defects that the court has identified, the court

grants AutoOpt leave to file an amended complaint within 28 days of the date this

memorandum opinion and order is filed.

---

[8]If the court later determines that AutoOpt has pleaded a federal-law claim on which relief can be granted, it can decide whether to exercise supplemental jurisdiction over the state-law claims and address any challenges that are properly made to these claims.   The court therefore declines at this time to consider any challenges to the state-law claims.

\* \* \*

For the foregoing reasons, the court denies defendants' Rule 12(b)(1) motion, and it grants defendants' Rule 12(b)(6) motion as to AutoOpt's federal-law claims and dismisses its RICO claims under 18 U.S.C. § 1962(c) and (d), its claim under the Lanham Act, 15 U.S.C. § 1114, and its claim under the EEA, 18 U.S.C. § 1832. Because the court is dismissing AutoOpt's federal-law claims, it declines at this time to exercise supplemental jurisdiction over AutoOpt's state-law claims. The court grants AutoOpt leave to file an amended complaint within 28 days of the date this memorandum opinion and order is filed. The court denies defendants' Rule 12(b)(2) motion as moot.

**SO ORDERED**.

June 16, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE