IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUTOOPT NETWORKS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-1252-D |
| VS. | § | |
| | § | |
| GTL USA, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This suit—filed originally in the District of New Jersey and transferred to this court—is brought by plaintiff AutoOpt Networks, Inc. ("AutoOpt") against defendants GTL USA, Inc. ("GTL"), GTL International, Ltd. ("GTL International"), GTL Limited ("GTL Ltd."), Sukanta Kumar Roy ("Roy"), and Urmeet Singh Juneja ("Juneja") (collectively, the "GTL Defendants"), and Retassh Arvind Bhansali ("Bhansali"), Manoj Gajanan Tirodkar ("Tirodkar"), Pinakin Bhupendra Gandhi ("Gandhi"), Charudatta Kashinath Naik ("Naik"), and Rajiv Kamat ("Kamat").  AutoOpt alleges claims for copyright infringement, breach of contract, tortious interference with contract, fraud, and violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.005(a) (West 2015).

GTL International moves to dismiss under Fed. R. Civ. P. 12(b)(4) and (5) for insufficient service of process and under Rule 12(b)(2) for lack of personal jurisdiction. Juneja and Roy, individually and on behalf of GTL and GTL Ltd., move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(4) and (5) insufficient

service of process.  The GTL Defendants and Kamat move under Rules 12(b)(6) and 9(b) to dismiss AutoOpt's fraud claim for failure to plead fraud with particularity.  Tirodkar moves under Rule 12(b)(2) to dismiss for lack of personal jurisdiction.  And Roy and Tirodkar move to dismiss under Rule 12(b)(4) and (5) for insufficient service of process.  For the following reasons, the court sustains GTL International's challenge to personal jurisdiction as to AutoOpt's copyright infringement claim, sustains defendants' challenge to AutoOpt's fraud claim (with leave to replead), and otherwise denies the motions either on the merits or without prejudice as premature.

I

Because the background facts and procedural history are set out in a prior memorandum opinion and order, *see Auto-Opt Networks, Inc. v. GTL USA, Inc.*, 2014 WL 2719219 (N.D. Tex. June 16, 2014) (Fitzwater, C.J.) ("*AutoOpt I*"), the court will recount only what is necessary to understand the court's decisions on the present motions.

A

AutoOpt is the owner of proprietary software, known as "HASATI," that can be used to collect data on cell phone performance.[1]  In 2011 AutoOpt entered into a license

---

[1]In deciding defendants' Rule 12(b)(6) motions, the court construes AutoOpt's second amended complaint in the light most favorable to AutoOpt, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in AutoOpt's favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

agreement ("Agreement")[2] with GTL, under which GTL was permitted to use the HASATI software when performing data collection services for various major cell phone service providers, such as AT&T.  Under the Agreement, GTL agreed to pay AutoOpt a portion of what GTL invoiced AT&T and its other clients for using the HASATI software and related services.

AutoOpt fulfilled its contractual obligations by providing GTL access to, and use of, the HASATI software and other related services.  Beginning in August 2012, however, GTL stopped making timely payments of AutoOpt's invoices.  In December 2012 AutoOpt notified GTL that this failure to pay was a material breach of the Agreement, and it demanded full payment.  GTL responded by exercising its "right to cure," as permitted under the Agreement, and volunteering to undertake a payment plan under which, by the end of January 2013, it would pay monies due to AutoOpt.  Despite submitting this "cure plan," GTL failed to pay the unpaid balances by January 2013.  As of June 2013, GTL owed AutoOpt almost $2.5 million in unpaid invoices.  On June 21, 2013 AutoOpt notified GTL by letter that, due to its breach of the Agreement and failure to honor its payment "cure" plan, AutoOpt was canceling GTL's license for the HASATI software effective June 26, 2013.

In July 2013 GTL Ltd. requested a meeting with AutoOpt at GTL Ltd.'s offices in Navi Mumbai, India to arrange for payment.  GTL Ltd. wholly owns GTL International,

---

[2]AutoOpt alleges that there were three agreements: a General Agreement for Software Usage & Professional Services, a Technical Order Agreement, and a Client Software and Application Management License Agreement.  For ease of reference, the court will refer to all three collectively as the Agreement.

which wholly owns GTL.  AutoOpt's President traveled to India to meet with Juneja (the Senior Vice President of GTL), Roy (a board member of GTL and GTL Ltd.), and Gandhi (the President of the International Business Division of GTL Ltd.).  At this meeting, defendants did not offer to make payment; instead, they explained that they were pursuing a credit facility in order to pay AutoOpt, and they requested additional time to make payment.

The following month, Juneja requested that AutoOpt's President meet with him in Plano, Texas, where GTL maintains a principal office, indicating that he had received authority from GTL Ltd. to pay AutoOpt.  AutoOpt's President traveled to Texas and met with Juneja, Gandhi, Kamat (the Chief Financial Officer and a board member of GTL), and Bhansali (the Chief Financial Officer of GTL International[3]).  But at the meeting, AutoOpt was informed that GTL Ltd. had ordered the shutdown of GTL's operations unless AutoOpt agreed to discount GTL's overdue invoices by approximately 50% and allow defendants more time to pay.  AutoOpt rejected the proposal.  As of October 20, 2013, GTL owed AutoOpt $2,681,934.65 under the Agreement and $316,171.24 in late fees.

AutoOpt alleges that Roy, Bhansali, Tirodkar (the Chairman and Managing Director of GTL, and Director and a board member of GTL International), Gandhi, and Naik (the Chief Executive Officer of GTL Ltd.) ordered GTL to cease paying its U.S.-based vendors and suppliers and to wire transfer the funds outside of the United States to GTL International,

_____

[3]In the second amended complaint, AutoOpt also identifies Bhansali as GTL International's Vice President of International Operations.  *See* 2d Am. Compl. ¶ 7.

- 4 -

GTL Ltd., and other entities affiliated with GTL Ltd.  AutoOpt also asserts that Juneja implemented this directive through a series of international bank wire transfers made throughout 2012 and 2013 from GTL's corporate accounts to the overseas banks of GTL's parent companies.  According to AutoOpt, defendants illegally converted and transferred to overseas accounts approximately $2.7 million of AutoOpt's accounts receivable, paid to GTL by AT&T and other telecom clients.

AutoOpt also alleges that, despite its notification that GTL's license to use the HASATI software had been canceled due to nonpayment, defendants continued to illegally use the software; that it discovered in August 2013 that GTL had posted an advertisement soliciting employment of a software manager who had knowledge regarding "customizing HASATI application as per consumer requirement," 2d Am. Compl. ¶ 33 (emphasis omitted); and that GTL's solicitation of a software engineer with the ability to customize, copy, and/or modify the HASATI software "demonstrates its intention to infringe AutoOpt's copyrights in its proprietary software for [GTL]'s own commercial use, in direct violation of" the Agreement. *Id.*

B

AutoOpt initially filed this lawsuit in the District of New Jersey, asserting claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, the Lanham Act, 15 U.S.C. § 1114, the Economic Espionage Act of 1996, 18 U.S.C. § 1832, and state common law claims for breach of contract, breach of the covenant of good faith and fair dealing, and fraud.  Several defendants moved to dismiss the case under Rule 12(b)(1)-(6),

or, alternatively, to transfer it to this court.  The District of New Jersey court transferred the case to this court under 28 U.S.C. § 1404(a), without reaching the merits of defendants' other motions.

In *AutoOpt I* the court denied the moving defendants' Rule 12(b)(1) motion, denied their Rule 12(b)(2) motion as moot, declined to reach their motions under Rule 12(b)(4) and (5), granted their Rule 12(b)(6) motion to dismiss AutoOpt's federal claims, declined to exercise supplemental jurisdiction over AutoOpt's state-law claims, and granted AutoOpt leave to amend.  *AutoOpt I,* 2014 WL 2719219, at *3 n.4, 11.  AutoOpt then filed its second amended complaint.

GTL International now moves under Rule 12(b)(4) and (b)(5) to dismiss for insufficient service of process, and under Rule 12(b)(2) to dismiss for lack of personal jurisdiction.  Juneja and Roy, individually and on behalf of both GTL and GTL Ltd., move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(4) and (5) for insufficient service of process.  The GTL Defendants and Kamat move under Rules 12(b)(6) and 9(b) to dismiss AutoOpt's fraud claim for failure to plead fraud with particularity.  Tirodkar moves under Rule 12(b)(2) to dismiss for lack of personal jurisdiction.  And Roy and Tirodkar move to dismiss under Rule 12(b)(4) and (5) for insufficient service of process.  AutoOpt opposes the motions.

II

The court considers together the challenges of the GTL Defendants and Tirodkar to service of process under Rule 12(b)(4) and (5).

A

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure." *Neely v. Khurana*, 2008 WL 938904, at *2 (N.D. Tex. Mar. 12, 2008) (Ramirez, J.), *rec. adopted*, 2008 WL 938904, at *1 (N.D. Tex. Apr. 7, 2008) (Fitzwater, C.J.). "Generally speaking, '[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service,' while a 'Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint.'" *Gartin v. Par Pharm. Cos.*, 289 Fed. Appx. 688, 691 n.3 (5th Cir. 2008) (per curiam) (alteration in original) (citation omitted).  Here, the GTL Defendants and Tirodkar challenge only the mode of delivery of the summons and complaint.  The court will therefore treat their motions as brought under Rule 12(b)(5).

"Under Rule 12(b)(5), a defendant can seek dismissal of a case for insufficient service of process.  The serving party bears the burden of proving the validity of service or good cause for failure to timely serve." *Byers v. Navarro County*, 2011 WL 4471024, at *1 (N.D. Tex. Sept. 27, 2011) (Fitzwater, C.J.) (citing *Lisson v. ING GROEP N.V.*, 262 Fed. Appx. 567, 569 (5th Cir. 2007) (per curiam); *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990)).  A district court "enjoys a broad discretion in determining

- 7 -

whether to dismiss an action for ineffective service of process." *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986) (per curiam).

B

In their original motion to dismiss filed in the District of New Jersey and in an advisory to the court filed in this court on July 28, 2014, the GTL Defendants challenge AutoOpt's purported service of process on them.  On August 18, 2014 AutoOpt properly served Juneja and GTL.  Accordingly, the court denies the Rule 12(b)(5) motion as to GTL and Juneja.

C

AutoOpt contends that it is "diligently working to re-serve" GTL International, GTL Ltd., and Roy through the Hague Convention.  According to AutoOpt:

> Counsel for AutoOpt was informed on August 13, 2014 that India's Central Authority did not accept the materials provided to it for service of process because the copies of the Summons and Amended Complaint were not originals.  AutoOpt has sent original Summonses and certified copies of the Amended Complaint to the process server in India to re-attempt service on GTL [Ltd.], GTL [International], and Roy.

P. 8/18/14 Br. 17.  Because AutoOpt is in the process of attempting to serve GTL International, GTL Ltd., and Roy under the terms of the Hague Convention, and because the time limits of Rule 4(m) do not apply to service in a foreign country, the court denies the Rule 12(b)(5) motions of these defendants without prejudice as premature.[4]

---

[4]If AutoOpt is unsuccessful in its attempts to re-serve GTL International, GTL Ltd., or Roy under the terms of the Hague Convention, these defendants may file renewed motions

D

Tirodkar moves to dismiss AutoOpt's action under Rule 12(b)(4) and (5).  He contends that AutoOpt purported to serve him on August 13, 2014 by serving the Delaware registered agent of GTL, as permitted under Del. Code Ann. tit. 10, § 3114 (West 2015), but did not satisfy the requirements of § 3114.  AutoOpt responds that it has already initiated service of process on Tirodkar in India through the Hague Convention and that the court should allow it to complete such service of process.

Because AutoOpt is in the process of re-serving Tirodkar under the terms of the Hague Convention, and because the time limits of Rule 4(m) do not apply to service in a foreign country, the court denies Tirodkar's Rule 12(b)(5) motion without prejudice as premature.[5]

III

The court now considers GTL International's challenge under Rule 12(b)(2) to the exercise of personal jurisdiction.[6]

---

to dismiss under Rule 12(b)(5).

[5]If AutoOpt is unsuccessful in its attempt to re-serve Tirodkar under the terms of the Hague Convention, he may file renewed motions to dismiss under Rule 12(b)(5).

[6]The court is only addressing in this memorandum opinion and order the Rule 12(b)(2) motion of GTL International.  The other Rule 12(b)(2) motions are denied at this point. Although GTL International has not yet been properly served, its motion is fully briefed, and the court has determined that it would assist the parties and the progress of this litigation if it were now decided.  Of course, if AutoOpt never properly serves GTL International, then it does not matter whether the court can constitutionally exercise personal jurisdiction.

A

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985)). The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over GTL International would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

- 10 -

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).  To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant.  *Mink*, 190 F.3d at 336.  "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' [its] activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum."  *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'"  *Mink*, 190 F.3d at 336 (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

The court is deciding this motion to dismiss without holding an evidentiary hearing.

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits.  Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

- 11 -

*Latshaw*, 167 F.3d at 211 (footnotes omitted).  Accordingly, the court must decide whether AutoOpt has made a prima facie showing (1) that GTL International purposefully directed its activities at residents of the forum, and (2) that this litigation results from alleged injuries that arise out of or relate to GTL International's activities directed at the forum.

B

1

AutoOpt contends that the court has specific jurisdiction over GTL International with respect to its fraudulent transfer claim under TUFTA because GTL International (through its officers, including Tirodkar) ordered and knowingly accepted fraudulent transfers from GTL International's Texas-based subsidiary, GTL, through GTL's Texas bank accounts, and thus reasonably should have anticipated being haled into a Texas court to account for its actions. AutoOpt relies on the declaration of Kunal Kapai ("Kapai"), GTL's former Chief Operating Officer, which states:

> I was directed by [Tirodkar, Roy, Naik, Gandhi], officers of [GTL Ltd.] and of [GTL International], [GTL's] parent companies, which are both located outside of the United States, that revenues we received at [GTL] from its customers, including AT&T, were to be wire transferred outside of the United States to the bank accounts of our parent company, [GTL International], in Singapore, and to other GTL affiliates and/or companies outside of the United States.  Additionally, these officers of [GTL Ltd.] and [GTL International] were constantly demanding increase in revenues in the US from other customers of [GTL], and using the funds from AT&T and other customers to fund the working capital for increasing the business from other customers, *before* payments due to [GTL]'s own creditors in the United States, such as Auto[O]pt, were made.

P. 8/18/14 App. 1-2 (some emphasis omitted).

The GTL Defendants challenge this basis for specific jurisdiction, contending that Tirodkar, who was the Chairman and Managing Director of GTL Ltd., is not a representative of GTL International.  They also posit that AutoOpt has not refuted that GTL received significant financial assistance from its parent companies and has been "a net beneficiary of its parent company's largesse," Ds. Reply 6 (emphasis omitted); that Kapai's declaration states that the key purpose of the directive was not to defraud AutoOpt, but to use the funds as working capital to increase GTL's business; and that AutoOpt does not state that GTL International targeted any forum resident with the purpose of committing fraud (and could not have, since AutoOpt is a Delaware corporation with its office in California).[7]

2

The court holds that AutoOpt has made a prima facie showing that GTL International purposefully availed itself of the benefits of the forum state of Texas and that AutoOpt's fraudulent transfer claim arises from GTL International's activities directed at the forum. Resolving all factual disputes in AutoOpt's favor, as the court must, AutoOpt has made a prima facie showing that funds were transferred at the direction of GTL International's

_____

[7]In support of their Rule 12(b)(2) motion, the GTL Defendants rely on the declaration of Milind Bapat, a director of GTL International, who avers that "GTL International does not conduct business operations, maintain an office or registered agent, or hold assets in New Jersey, or elsewhere in the United States." Ds. 2/11/14 App. 2.  Even assuming that these facts are true, the court can still exercise specific personal jurisdiction over GTL International if AutoOpt establishes such jurisdiction.

officers[8] from GTL's Texas bank accounts to GTL International's overseas bank accounts, that the directives to transfer the funds were given during meetings conducted in Texas, and that GTL International profited, at AutoOpt's expense, through the receipt of money from a corporation with a principal office in Texas. These facts, if true, are sufficient to show that GTL International, having benefited from the receipt of funds from its Texas-based subsidiary and actively directed and assisted that subsidiary in avoiding the payment of debts owed to its creditors, can reasonably expect to be haled into a Texas court to account for its actions. *See, e.g., In re Hot-Hed, Inc.*, 2014 WL 2919340, at *3 (Bankr. S.D. Tex. June 26, 2014) (holding that allegation that foreign corporation received fraudulent transfers from Texas debtor was sufficient to make a prima facie case that court had specific jurisdiction over foreign corporation); *see also Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 348 (5th Cir. 2014) (per curiam) ("if the allegations are true, then the Defendants, who have benefi[t]ed from receipt of five franchise agreements in Texas, can reasonably expect to be haled into a Texas court." (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006))); *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) ("A non-resident defendant establishes such minimum contacts by purposefully

---

[8] AutoOpt's evidence shows that the officers included Tirodkar, who allegedly served as a Director and board member of GTL International. Although the GTL Defendants initially challenged AutoOpt's proof that Tirodkar was an officer of GTL International, GTL International filed a January 9, 2015 advisory to the court in which it states that Tirodkar "resigned as a Director of [GTL] International on September 8, 2014" and that Roy's supplemental declaration "should have noted that Mr. Tirodkar was not a director of [GTL] International at that time." D. 1/9/15 Advisory to the Court at 1.

availing himself of the benefits of the forum state, so that he 'should reasonably anticipate being haled into court' there." (citations omitted)).[9]

Citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386 (5th Cir. 2009), the GTL Defendants contend that AutoOpt cannot establish personal jurisdiction over GTL International because it has failed to show that any transfer was specifically intended to defraud AutoOpt or that AutoOpt is a Texas resident. The court disagrees.

First, contrary to the GTL Defendants' assertion, AutoOpt has made a prima facie showing that the transfers were specifically intended to re-route funds that were due to GTL's creditors, including AutoOpt. For example, Kapai avers:

> I attended several meetings at our USA office in Texas, conducted by officers of the parent [GTL Ltd.] and [GTL International], in which the directives to continue wire transferring a substantial portion of our US income overseas, or to utilize those funds as working capital to increase [GTL]'s non AT&T business revenues, *instead of paying those funds to U.S. creditors such as AutoOpt*, were reinforced.

P. 8/18/14 App. 3 (emphasis added).

Second, the court disagrees with the contention that *Mullins* requires that AutoOpt be a Texas resident in order for this court to exercise personal jurisdiction over GTL International. The *Mullins* panel considered whether a fraudulent transfer could result in personal jurisdiction in the *defrauded creditor's state of residence* over the entity accepting

_____

[9]GTL International contends that it also provided financial support to GTL and that the purpose of the overseas transfers was to use the funds as working capital to increase GTL's business. This contention does not defeat AutoOpt's prima facie showing.

the transfer. *Mullins*, 564 F.3d at 400 ("We are skeptical of [the] suggestion that a non-resident defendant's receipt of assets transferred with an intent to hinder, delay, or defraud a creditor *ipso facto* establishes personal jurisdiction *in the state where a complaining creditor resides.*" (emphasis added)). The court did not address whether the court could exercise personal jurisdiction in the state from which the fraudulent transfers were made and where the party accepting the fraudulent transfer had actively participated by directing the conduct of its subsidiary. When a defendant purposefully avails itself of the benefits of the forum state, there clearly are sufficient minimum contacts to support the exercise of specific jurisdiction. *See Palermo*, 723 F.3d at 559. The fact that AutoOpt, the allegedly injured party, is not a Texas resident does not undermine the court's conclusion that AutoOpt has made a prima facie showing that GTL International purposefully directed its activities at GTL, its Texas-based subsidiary, in the forum state of Texas, and that the instant litigation results from alleged injuries that arise out of or relate to GTL International's activities directed at the forum.

## C

AutoOpt relies on the same evidence to show specific jurisdiction based on its claim for tortious interference with contract.

To determine whether personal jurisdiction exists regarding a tortious interference with contract claim, the court "determine[s] whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the nexus between the forum and the injured contractual relationship." *Mullins*, 564 F.3d at 402 (citing cases). Here, one of the

parties to the Agreement, GTL, is a Texas-based corporation, and the contract is governed by Texas law.  Additionally, the GTL Defendants have adduced evidence that work done under the Agreement was administered from GTL's Texas office, all of the contracting for field testing was coordinated out of Texas, and a significant portion of the data collection work performed in the field under the Agreement was performed in Texas.  GTL International's alleged intentional interference with the Agreement in Texas is sufficient to establish minimum contacts with the forum state.[10]

D

1

AutoOpt next contends that the court has specific jurisdiction over GTL International

---

[10]In their final reply, the GTL Defendants contend that, as a matter of law, AutoOpt's tortious interference claim cannot support jurisdiction.  They posit that GTL is a wholly owned subsidiary of GTL International, and that, under Texas law, "'[w]hen there is a complete identity of interests [between two entities], there can be no interference [with a contract] as a matter of law.'" Ds. 10/17/14 Final Reply 8 (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 797 (Tex. 1995)).  Because the GTL Defendants raise this argument for the first time in their final reply, the court will not consider it.  *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).  The court expresses no view, however, concerning whether AutoOpt can prevail on this claim against GTL International at a later procedural stage of this case.  *See, e.g., Cleveland Reg'l Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 348 (Tex. App. 2010, pet. denied) (reviewing cases and holding "that as a matter of law, a parent company cannot tortiously interfere with the contracts of its wholly owned subsidiary.").

based on its fraud claim.[11]   It maintains that, while GTL continued to carry out GTL International's directives to divert funds overseas, Bhansali, an officer of GTL International, falsely represented to AutoOpt's President in a meeting in Texas that all past due payments would be made by March 2013.   AutoOpt supports its assertions with the declaration of Dipesh Shah ("Shah"), the President and Chief Executive Officer of AutoOpt, who avers:

> [Bhansali] has been introduced to me on multiple occasions (including at the January 30, 2013 and August 3, 2013 meetings discussed below) as the Chief Financial Officer of [GTL International].   Bhansali was present at the January 30, 2013 meeting with me in Plano, Texas. . . .   In the meeting on January 30, 2013, Bhansali and representatives of [GTL] and [GTL Ltd.] reassured me that all past due payments would be made to AutoOpt by March 2013.

P. 8/18/14 App. 90.   Shah also avers that Bhansali was "CFO of Defendant GTL [International]."   *Id.* at 14.

The GTL Defendants maintain that minutes from a January 9, 2013 meeting in India confirm that neither Tirodkar nor GTL International attended that meeting, and that a dispute regarding how much was owed remained unresolved after the meeting.   They also contend that Bhansali was formerly employed by an entirely separate entity, GTL (Singapore) Pte Ltd., and was not an employee, officer, or director of GTL International.

---

[11]It is immaterial that the court concludes below that AutoOpt has failed to plead its fraud claim with particularity.   The determination of whether AutoOpt has satisfied its burden under a prima facie standard is different from the pleading standard of Rule 9(b).

2

A "single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001) (holding that allegations that defendant participated in telephone conversation designed to convince plaintiff to make loan based on several misrepresentations, and prepared and sent loan documents and stock certificates to plaintiff in Texas, which contained fraudulent misstatements, were sufficient evidence of minimum contacts to support personal jurisdiction in Texas). Additionally, "[w]hen a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction." *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999). Resolving all factual disputes in AutoOpt's favor, the court holds that AutoOpt has made a prima facie showing that GTL International, through Bhansali (its CFO), made a false representation of material fact during a meeting conducted in Texas, and that AutoOpt's fraud claim arises from that misrepresentation.[12]

E

1

Finally, AutoOpt contends that the court can exercise specific personal jurisdiction

---

[12]The GTL Defendants offer evidence that Bhansali is not a representative of GTL International. Resolving all factual disputes in favor of AutoOpt, as the court must, *see, e.g., Latshaw*, 167 F.3d at 211, the court holds for purposes of this motion that Bhansali is a representative of GTL International.

over GTL International based on AutoOpt's claim that GTL International is liable as a vicarious and/or contributory infringer of the HASATI software. AutoOpt maintains that GTL International, with knowledge that GTL's license with AutoOpt had been canceled, encouraged and induced Texas-based GTL to continue using the copyrighted software and receive payment from GTL's customers for using the HASATI software after the license had been canceled. It relies on Shah's declaration, in which he avers that "it was clear to me that Bhansali of [GTL International] and Tirodkar of [GTL International] and [GTL Ltd.] knew that [GTL]'s license had been cancelled but that [GTL] was still using AutoOpt's proprietary HASATI software." P. 8/18/14 App. 91. The GTL Defendants challenge the evidence on which AutoOpt relies, contending, *inter alia*, that Shah's allegation that GTL International "knew" that GTL continued to use the HASATI software after the June 26, 2013 cancellation does not describe tortious activity aimed at the forum.

2

A party can be held vicariously liable for copyright infringement if it (1) had "the right and ability to control the infringing activity" and (2) had "a direct financial interest in that activity." *EMI April Music Inc. v. Jet Rumeurs, Inc.*, 632 F.Supp.2d 619, 623 (N.D. Tex. 2008) (Lynn, J.). "A party is liable for contributory infringement when it, 'with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another.'" *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). AutoOpt has failed to introduce evidence or make uncontroverted allegations that

GTL International either induced, caused, or materially contributed to GTL's infringement of the HASATI software, or that GTL International had a right and ability to control the infringing activity. AutoOpt relies on the declarations of Kapai and Shah, but Kapai does not mention the HASATI software or any ability of GTL International to control GTL's infringing activity. Evidence that GTL International was "the parent and affiliate of [GTL] and . . . a recipient of the unlawfully diverted funds" is insufficient to make a prima facie showing that GTL International "had the right and ability to supervise [GTL]'s infringing conduct and a direct financial interest in the exploitation of the HASATI software." P. 8/18/14 Br. 11. Nor does Shah's affidavit support a finding of specific jurisdiction regarding AutoOpt's copyright infringement claim, stating only that GTL International "knew that [GTL]'s license had been cancelled but that [GTL] was still using AutoOpt's proprietary HASATI software," not that GTL International induced, caused, or materially contributed to GTL's infringement. P. 8/18/14 App. 91. AutoOpt has therefore failed to make a prima facie showing that GTL International had anything more than knowledge of GTL's copyright infringement. This is insufficient to establish a prima facie case that, with respect to AutoOpt's copyright infringement claim, GTL International purposefully directed its activities at residents of the forum.

3

Specific jurisdiction is a "claim-specific inquiry[.]" *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for

each claim." *Id.*  Because AutoOpt has failed to establish sufficient minimum contacts to support a finding of specific jurisdiction with regard to its copyright infringement claim asserted against GTL International, the court grants the motion under Rule 12(b)(2) to dismiss that claim, and it dismisses the claim without prejudice for lack of personal jurisdiction.

F

If a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable.  *Cent. Freight Lines Inc. v. APA Transp. Corp*., 322 F.3d 376, 384 (5th Cir. 2003).  "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it."  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (quoting *Burger King Corp.*, 471 U.S. at 477).  "It is rare to say the assertion is unfair after minimum contacts have been shown."  *Id*.

The GTL Defendants do not attempt to demonstrate that the exercise of jurisdiction in this case would offend traditional notions of fair play and substantial justice.  Although GTL International is a foreign corporation, there is no indication that it will suffer any undue burden.  Texas has an interest in preventing the fraudulent transfer of funds out of this state and in providing a remedy for tortious conduct occurring in the state and for the tortious interference with contracts performable in Texas and governed by Texas law.  AutoOpt has an interest in obtaining convenient and effective relief in its chosen forum.  The judicial system's interest in efficient resolutions of controversies, and the states' shared interest in

fundamental social policies, neither support nor undercut the exercise of jurisdiction here. The court therefore holds that the exercise of personal jurisdiction over GTL International with respect to AutoOpt's claims for fraudulent transfer, tortious interference with contract, and fraud comports with traditional notions of fair play and substantial justice. Accordingly, the court denies the GTL Defendants' Rule 12(b)(2) motion as to these claims.[13]

IV

The GTL Defendants and Kamat move to dismiss AutoOpt's fraud claim under Rules 12(b)(6) and 9(b) for failure to plead fraud with particularity.

A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiff['s] amended complaint by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and alteration omitted). To survive the motions to dismiss under Rule 12(b)(6), AutoOpt must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

---

[13]As noted *supra* at note 6, the court is considering GTL International's Rule 12(b)(2) motion because it has been fully briefed, but is not considering the other challenges to personal jurisdiction. This includes Tirodkar's challenge to the exercise of *in personam* jurisdiction under Rule 12(b)(2). Due to an apparent misunderstanding between counsel, the parties have not fully briefed the merits of Tirodkar's motion. If AutoOpt properly serves him, Tirodkar may move anew to dismiss under Rule 12(b)(2), which will enable the parties to fully brief the motion.

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd,* 514 Fed. Appx. 513 (5th Cir. 2013).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted).  More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *United States ex*

*rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th

Cir. 1997)).  Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires

only a short and plain statement of the claim showing that the pleader is entitled to relief,"

"punctilious pleading detail" is not required.  *Steiner v. Southmark Corp.*, 734 F. Supp. 269,

273 (N.D. Tex. 1990) (Fitzwater, J.) (quoting *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*,

892 F.2d 1238, 1264 (5th Cir. 1990)) (internal quotation marks omitted).  "The court's key

concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks

to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out

actionable wrongs."  *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex.

Aug. 28, 2007) (Fitzwater, J.).

                                                    B

        The GTL Defendants contend that AutoOpt has not pleaded its fraud claim with the

particularity required by Rule 9(b) because it has failed to identify "'who' said 'what'" by

not setting forth any facts specific to any defendant.  Ds. 7/28/14 Br. 5.  They contend that

AutoOpt has failed to distinguish among the defendants who attended the various meetings

with AutoOpt and that it does not specifically identify who uttered which representations, on

behalf of whom, or at which meeting, instead making generalized and undifferentiated

allegations as to all ten defendants, using terms such as "representatives" and "Defendants"

to lump them all together as a single unit.

In support of its fraud claim, AutoOpt alleges:

> Defendants [GTL], [GTL International], and [GTL Ltd.] falsely represented to AutoOpt that [GTL] would pay the amounts due to AutoOpt under the Agreements. For example, when AutoOpt's President met with representatives of [GTL], [GTL International], and [GTL Ltd.] in January 2013, the representatives of these companies assured AutoOpt that all past due payments would be made by March 2013. These representations were false. Not only did [GTL] fail to pay the amounts due to AutoOpt by March 2013, but it has *still* failed to pay the amounts due.

2d Am. Compl. ¶ 66. This allegation fails to identify the required particulars. *See, e.g., Turner*, 2011 WL 3606688, at *2. For example, AutoOpt does not plead which of the seven individually-named defendants (if any) made the alleged misrepresentation or allege a specific location or dates (other than the "example" of a meeting "in January 2013") that the misrepresentation was made. In response to the motion, AutoOpt contends that

> representatives from the GTL Entities all made the *same misrepresentation*: [GTL] would pay the amounts due under the agreements by March 2013. . . . The GTL Entities fail to recognize that the Amended Complaint attributes one misrepresentation—the same misrepresentation—to the named representatives acting on behalf of their organizations.

P. 8/18/14 Br. 21 (bold font omitted). Alleging that "representatives" from GTL, GTL International, and GTL Ltd. "misrepresented" that payment would be made by March 2013 is insufficient to satisfy the heightened pleading requirements of Rule 9(b). AutoOpt must allege, at the very least, which of the several "representatives" of GTL, GTL International, and GTL Ltd. stated, during a particular meeting in January 2013, that payment would be

made by March 2013.[14]

Accordingly, the court grants the GTL Defendants' and Kamat's motions to dismiss AutoOpt's fraud claim under Rules 12(b)(6) and 9(b).[15]

C

Although the court is dismissing AutoOpt's fraud claim, it will permit AutoOpt to replead this claim. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, J.) (citation and internal quotation marks omitted). It is not clear that the defects are incurable or that AutoOpt is unwilling or unable to amend in a manner that will avoid dismissal.

---

[14]In the context of GTL International's jurisdictional challenge, AutoOpt adduces evidence that "[o]n January 30, 2013, at a meeting in Texas, GTL [International]'s Bhansali falsely represented to AutoOpt's President that all past due payments would be made by March 2013." P. 10/3/14 Surreply 7. AutoOpt has not pleaded these specific facts, however, and this court has held that factual assertions made in briefs filed in opposition to Rule 12(b)(6) and 9(b) motions do not qualify as pleaded facts.

[15]In response to Kamat's motion, AutoOpt contends that it has not pleaded a common law fraud claim against Kamat, that his motion to dismiss is without merit, frivolous, and should be denied, and Kamat should be required to answer the second amended complaint. Although AutoOpt alleges that "Defendants [GTL], [GTL International], and [GTL Ltd.] falsely represented to AutoOpt that [GTL] would pay the amounts due to AutoOpt under the Agreements," 2d Am. Compl. ¶ 66, the court cannot determine from AutoOpt's other fraud allegations to which defendants it is referring when it refers collectively to undifferentiated "Defendants." Accordingly, until AutoOpt makes clear that it is not asserting a fraud claim against Kamat, the court disagrees that Kamat's motion is without merit or frivolous.

Furthermore, although the court has already granted AutoOpt leave to replead, it did not address in *AutoOpt I* the sufficiency of AutoOpt's fraud claim under Rule 9(b).  Instead, with regard to AutoOpt's RICO claim, it declined to address whether AutoOpt had pleaded the predicate acts of fraud with particularity because AutoOpt had not adequately pleaded the element of continuity.  *AutoOpt I*, 2014 WL 2719219 at *8, n.6.  And because the court declined to exercise supplemental jurisdiction over AutoOpt's state-law claims, it did not address whether AutoOpt had adequately pleaded a state-law fraud claim.  The court therefore grants AutoOpt 28 days from the date this memorandum opinion and order is filed to file a third amended complaint that pleads fraud with the particularity that Rule 9(b) requires.

\*   \*   \*

Accordingly, for the reasons explained, the court rules as follows.  The motion to dismiss of the GTL Defendants, filed prior to the transfer of this case to this court and as supplemented, is granted to the extent that GTL International challenges under Rule 12(b)(2) the exercise of personal jurisdiction over AutoOpt's copyright infringement claim against it.  The balance of the motion under Rule 12(b)(2), (b)(4), or (b)(5) is denied as premature or on the merits.  Roy's supplemental motion to dismiss is denied without prejudice.  Tirodkar's supplemental motion to dismiss under Rule 12(b)(2), (4), and (5) is denied without prejudice.  The court grants the GTL Defendants' and Kamat's Rules 12(b)(6) and 9(b) motions to dismiss AutoOpt's fraud claim, and it also grants AutoOpt leave to replead its fraud claim

- 28 -

no later than 28 days after the date this memorandum opinion and order is filed.

       **SO ORDERED**.

       January 30, 2015.

                            SIDNEY A. FITZWATER
                            UNITED STATES DISTRICT JUDGE